IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-135

No. 514A20

Filed 5 November 2021

IN THE MATTER OF: J.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 18 September 2020 by Judge J.H. Corpening II in District Court, New Hanover County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and brief without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief filed for petitioner-appellee.*

*No brief filed for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant father.*

HUDSON, Justice.

¶ 1    Respondent appeals from the trial court's order terminating his parental rights in his minor child J.B. (Jeb).[1] He challenges the four grounds for termination found by the trial court as well as the court's conclusion that termination of his parental rights was in Jeb's best interests. We conclude that the trial court's findings supported its determination that respondent's rights were subject to termination based on neglect and that the trial court did not abuse its discretion when deciding

---

[1] A pseudonym is used to protect the identity of the minor child and for ease of reading.

Jeb's best interests. Accordingly, we affirm the termination order.

## I.   Background

On 7 August 2019, Jeb's mother (petitioner) filed a petition to terminate respondent's parental rights to Jeb. Petitioner alleged that respondent had been incarcerated for several years after he was convicted of child molestation in Georgia. The victim was the daughter of a family friend, and the molestation occurred in the family home where petitioner, respondent, and Jeb resided. Petitioner sought to terminate respondent's rights based on four grounds: neglect, failure to legitimate, dependency, and committing felony assault that resulted in serious bodily injury to another child in the home. *See* N.C.G.S. § 7B-1111(a)(1), (5), (6), (8) (2019).

The petition was heard on 3 August 2020. Petitioner testified that when she confronted respondent with the molestation allegations, he did not deny them but instead responded, "[t]hat's not how it happened." Petitioner then took Jeb and went to live with petitioner's father in Wilmington; respondent was arrested a few weeks later. Petitioner identified the victim as the daughter of her best friend, who often came to visit for a few days at a time, and petitioner testified that one of the molestation incidents happened in Jeb's presence. Petitioner also noted that under the terms of his Georgia criminal judgment, respondent would not be allowed to have contact with Jeb until Jeb turns eighteen and that respondent still faced additional charges in North Carolina. She explained that she was seeking termination of

respondent's rights to ensure Jeb was protected from respondent.

Respondent also testified at the hearing. He explained that he agreed to enter an *Alford* plea in Georgia to mitigate against the risk of receiving a very long sentence. He also stated that he had taken classes in prison, including a sex offender prevention class, a motivation for change class, and a reentry class. Respondent acknowledged that he could not have contact or develop a relationship with Jeb until Jeb turns eighteen, but he also expressed his wish to retain his parental rights.

On 18 September 2020, the trial court entered an order terminating respondent's parental rights. The court concluded that all four grounds for termination alleged by petitioner existed and that termination would be in Jeb's best interests. Respondent appeals.

## II.    Standard of Review

Termination-of-parental-rights cases consist of two phases. First, the trial court adjudicates the existence of the alleged grounds for termination under N.C.G.S. § 7B-1111. *See* N.C.G.S. § 7B-1109(e) (2019). The petitioner must prove by clear, cogent, and convincing evidence that one or more grounds for termination exist. *In re A.U.D.*, 373 N.C. 3, 5–6 (2019). When reviewing the trial court's adjudication of a ground for termination, we examine whether its findings of fact are supported by clear, cogent, and convincing evidence and whether those findings in turn support the trial court's conclusions of law. *In re E.H.P.*, 372 N.C. 388, 392 (2019). Unchallenged

findings are "deemed supported by competent evidence and are binding on appeal." *In re T.N.H.,* 372 N.C. 403, 407 (2019). The trial court's conclusions of law are reviewed de novo. *In re C.B.C.,* 373 N.C. 16, 19 (2019).

¶ 7     If the trial court determines that at least one ground for termination has been established, the case proceeds to the dispositional phase, where the court "determine[s] whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2019). The court's dispositional findings are binding on appeal if supported by any competent evidence. *In re K.N.K.,* 374 N.C. 50, 57 (2020). The trial court's conclusion regarding the child's best interests is reviewed for an abuse of discretion, and thus it is subject to reversal "where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re M.A.,* 374 N.C. 865, 876 (2020) (cleaned up).

### III.    Grounds for Termination

¶ 8     Respondent challenges all four grounds for termination found by the trial court. We begin by assessing the trial court's determination that respondent's rights were subject to termination based on neglect.

¶ 9     Under N.C.G.S. § 7B-1111(a)(1), parental rights may be terminated if the trial court finds that a parent has neglected their child to such an extent that the child fits the statutory definition of a "neglected juvenile." A neglected juvenile is defined, in relevant part, as a juvenile "whose parent, guardian, custodian, or caretaker does not

provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2019).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of a likelihood of future neglect by the parent. When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing.

*In re R.L.D.*, 375 N.C. 838, 841 (2020) (cleaned up). "[E]vidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights[,]" but "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re Ballard,* 311 N.C. 708, 715 (1984).

¶ 10        Here, the trial court found the following with respect to neglect:

> 6. That on or about December 2013, Petitioner discovered that Respondent Father had repeatedly molested and engaged [in] inappropriate behavior with a minor child. The behavior occurred in their home and the home of the minor child.
>
> 7. That [Petitioner] confronted the Respondent-Father but he did not deny the allegations against him. In fact, all he replied was "that's not how it happened." This made [Petitioner] feel sick and she began packing to leave with the minor child.

8. That the Respondent-Father has neglected the minor child by failing to provide proper care, supervision or discipline for him and allowed him to live in an environment injurious to his welfare. That the Respondent-Father molested another juvenile who was present in his home, and on several occasions, [Jeb] was in the same bed during the molestation.

9. That Respondent-Father entered an Alford Plea to child molestation and was convicted. A child molestation charge in Georgia would be prosecuted under a different statute in North Carolina. A person who commits the offense of aggravated child molestation in Georgia requires that an act physically injures the child or involves an act of sodomy. While this charge is substantially similar to Felony Assault that results in bodily injury, the conviction of the crime in North Carolina would require the individual register as a Sex Offender in North Carolina. It is noted that charges in North Carolina are forthcoming. Within the meaning of N.C.G.S. § 7B-1111(a)(8), Respondent-Father's child molestation is substantially similar to felony assault that results in serious bodily injury to the child.

10. That during the past four years since being apart from the minor child, Respondent-Father has not inquired about the health, physical or emotional well-being of the Juvenile. That Respondent-Father failed to attempt to contact Juvenile, failed to write or send cards to Juvenile on birthdays or other special occasions. [Jeb] has not received birthday gifts, or Christmas gifts from Respondent-Father. That Respondent-Father faces charges in New Hanover County that will likely prevent him from properly caring for and providing supervision of minor child for the foreseeable future.

11. In the event that legal custody would be restored to Respondent-Father, there would be the likelihood of repetition of neglect. That the conduct of the Respondent-Father has been such as to demonstrate that he will not promote the Juvenile's health, physical and emotional well-

being. Respondent-Father demonstrated this through his conduct with the juvenile girl he molested in the same home as, and in the presence, of [Jeb].

12. Respondent-Father also faces uncertainty about charges in New Hanover County and it is likely that he will continue to be unable to provide proper care and supervision of the minor child due to these charges. It is in the best interests of [Jeb] that the parental rights of [Respondent] be terminated.

13. Respondent-Father neglected the minor child in that [Jeb] did not receive proper care, supervision, or discipline as detailed in the preceding paragraphs of the Findings of Fact in this Order. Sufficient improvements in parenting have not been made in order to justify that safe placement would ever be possible with Respondent-Father.

Respondent challenges various portions of these findings as unsupported by the evidence.

First, respondent challenges the trial court's findings of fact 6, 7, and 8, in which the trial court discussed his past neglect. He contends that his *Alford* plea was insufficient to establish that he actually molested a child, that there was no evidence he failed to deny the allegations against him when confronted by petitioner, and that there was no evidence that the molestation occurred while Jeb was in the same bed.

These challenged findings were consistent with petitioner's testimony. She testified that respondent was arrested for child molestation, that the victim was the daughter of her best friend, and that when she confronted respondent, he did not deny the allegations but instead stated, "[t]hat's not how it happened." She also stated that

the offenses that formed the basis for respondent's charges in Georgia happened in their family home, including one occasion where Jeb was also present. She further testified:

> I believe that he was grooming [the victim] the whole time—our whole relationship. And then, with the incidents that happened in Georgia, [Jeb] was in the bed during the snuggle times, and that concerns me that he was in the same room as the things—whatever was happening was happening.

Based on this testimony, the trial court could reasonably infer that petitioner engaged in repeated child molestation and that at least one incident occurred while Jeb was in the same bed. *See In re D.L.W.,* 368 N.C. 835, 843 (2016) (recognizing the trial court's "responsibility to pass upon the credibility of the witnesses and the weight to be given their testimony and the reasonable inferences to be drawn therefrom" (cleaned up)). However, we agree with respondent that the evidence does not support the trial court's finding that the molestation occurred while Jeb was present "on several occasions," and we therefore disregard that portion of finding of fact 8. *See In re S.M.,* 375 N.C. 673, 684 (2020). Respondent's challenges to findings of fact 6 through 8 otherwise fail.

¶ 13        Respondent also challenges finding of fact 9 to the extent that it suggests he was convicted of aggravated child molestation. The finding begins by specifically stating that "Respondent-Father entered an Alford Plea to child molestation and was convicted[,]" a statement respondent's objection appears to concede is true. The

remainder of the finding, which discusses the legal similarities between a Georgia conviction for aggravated child molestation and a North Carolina conviction for felony assault inflicting serious bodily injury, applied to the trial court's adjudication under N.C.G.S. § 7B-1111(a)(8) but was not applicable to the neglect ground under N.C.G.S. § 7B-1111(a)(1); thus, we do not address respondent's challenge to it here. *See In re N.G.*, 374 N.C. 891, 900 (2020) (this Court limits its "review to those challenged findings that are necessary to support the trial court's determination that . . . parental rights should be terminated"). Taken together, the trial court's findings of fact 6 through 9 provide evidence of past neglect by respondent that the trial court could consider as part of its adjudication of the neglect ground. *See In re Ballard,* 311 N.C. at 715; N.C.G.S. § 7B-101(15) ("In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home . . . where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.").

¶ 14    Next, respondent challenges findings of fact 11, 12, and 13, which together reflect the trial court's ultimate determination that there would be future neglect if Jeb was returned to respondent's care. Respondent argues that there is no possibility of future neglect because under the terms of his probation, he is not allowed to have any contact with Jeb until he reaches the age of majority. We rejected a similar argument in *In re J.S.*, a case in which the respondent-father, who was serving a

twenty-eight year prison sentence, argued

> that since he will be incarcerated for the next twenty-eight years, it is neither likely nor probable that the children will be in his care again during their minority, and such "an extremely remote possibility . . . does not support a conclusion that neglect during physical care and custody of the children is likely to recur."

*In re J.S.*, 377 N.C. 73, 2021-NCSC-28, ¶ 20 (alteration in original). In responding to this claim, we noted that "the extent to which a parent's incarceration or violation of the terms and conditions of probation support a finding of neglect depends upon an analysis of the relevant facts and circumstances, including the length of the parent's incarceration." *Id.*, ¶ 21 (cleaned up). We concluded that the respondent's "lengthy incarceration implicates a future likelihood of neglect, as respondent cannot provide 'proper care, supervision, or discipline' while he is incarcerated, N.C.G.S. § 7B-101(15), and while not the only factor, is a relevant and necessary consideration in the trial court's finding of neglect." *Id.*, ¶ 22. Thus, while a lengthy period of incarceration (or in this case, probation) cannot be the sole basis for a determination that future neglect is likely, it is a highly relevant factor. So long as other factors which also implicate a likelihood of future neglect are present, the trial court was permitted to use respondent's inability to contact Jeb for the rest of his childhood to reach its determination that neglect existed as a ground for termination.

¶ 15     The trial court's order reflects another factor supporting a likelihood of a repetition of neglect was present in this case. Specifically, the trial court found in

finding of fact 10 that respondent never "inquired about the health, physical or emotional well-being" of Jeb at any point during the four years between his arrest and the termination hearing. Respondent concedes that this finding is accurate but argues that it fails "to account for Respondent's inability to maintain some sort of relationship with Jeb or even inquire as to his wellbeing where Respondent was not willfully refusing to do so."

¶ 16        Respondent is correct that his criminal judgment in Georgia included, as a term of probation, the following prohibition:

> **Contact with minors.** You shall have no contact, whether directly in person or indirectly through any means of communication, with any child under the age of eighteen (18), including your own children, nor with any person unable to give consent because of mental or emotional limitations. Neither shall you attempt contact with the aforementioned except under circumstances approved in advance and in writing by the Court. If you have incidental contact with children, you will be civil and courteous to the child and immediately remove yourself from the situation. You will discuss the contact at your next meeting with your Probation Officer.

But while this provision precludes respondent from having either direct or indirect contact with Jeb, it did not absolve him of all of his parenting responsibilities for the remainder of Jeb's childhood. This Court has previously explained that a situation like extended incarceration

> does not negate a father's neglect of his child because the sacrifices which parenthood often requires are not forfeited when the parent is in custody. Thus, while incarceration

> may limit a parent's ability to show affection, it is not an
> excuse for a parent's failure to show interest in a child's
> welfare by whatever means available.

*In re S.D.,* 374 N.C. 67, 76 (2020) (cleaned up). In this case, it is undisputed that respondent failed to show interest in Jeb's welfare by whatever means available. The prohibition against contact with Jeb did not forbid respondent from seeking information about Jeb's welfare through his family or other means, but he failed to even attempt to find a way to learn about Jeb's wellbeing. Respondent's total inaction was properly considered by the trial court in adjudicating the existence of the neglect ground. *See id.* (upholding an adjudication of neglect as a ground for termination in part because the "respondent-father made minimal efforts to show interest in [his minor child] while incarcerated, sending just a single birthday card to her after the trial court advised him that 'he may send any mail or gifts to [the minor child] through the social worker' and after [the petitioner] encouraged him to do so").

¶ 17        By conceding that he is "precluded from having contact with any minors whatsoever until 2037," respondent necessarily also concedes that he will be unable to provide care for Jeb for the remainder of his minority, regardless of whether respondent is convicted of further crimes. As a result, like the respondent-father in *In re J.S.*, he necessarily cannot provide Jeb with "proper care, supervision, or discipline," even if he is released from prison after the completion of his Georgia sentence. *In re J.S.,* 2021-NCSC-28, ¶ 22. Combined with respondent's failure to

make any effort to show an interest in Jeb's welfare for more than four years preceding the termination hearing, the trial court had a sufficient basis to determine that there was a likelihood of future neglect in this case. *See id.*, ¶ 23.

¶ 18 Consequently, the trial court properly determined that respondent's parental rights were subject to termination based on neglect. Since we have concluded this ground has ample support in the trial court's findings, we need not address respondent's arguments as to the remaining termination grounds found by the trial court under N.C.G.S. § 7B-1111(a)(5), (6), and (8). *See In re A.R.A.*, 373 N.C. 190, 194 (2019) ("[A] finding of only one ground is necessary to support a termination of parental rights . . . .").

## IV. Best Interests Determination

¶ 19 Respondent also argues that the trial court erred by concluding that termination of his parental rights was in Jeb's best interests. Under N.C.G.S. § 7B-1110, a court making a best interests determination

> shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). In this case, the trial court made the following findings regarding Jeb's best interests:

> 22. That [Jeb] currently lives with [Petitioner] in their home. He has lived there since late July of 2016. [Petitioner] is committed to ensuring [Jeb] is well cared for and happy. All of minor child's needs are being met. [Jeb] is healthy, well-adjusted and in a stable environment.
>
> 23. That the Attorney Guardian ad Litem, Mark J. Ihnat found [Petitioner] providing a stable environment and attentiveness to [Jeb]'s needs. [Petitioner] has provided him with a spacious and well-appointed home. [Jeb] is an active child who has access to his toys and various activities. Juvenile has a strong relationship with [Petitioner] and his maternal grandparents.
>
> 24. That the Juvenile is six years old and needs consistency and stability. That the Guardian ad Litem recommended to the Court that it was in the best interests of [Jeb] that the parental rights of Respondent-Father be terminated. Currently, [Petitioner] is committed to caring for [Jeb] and engaged in his educational, social and medical well-being. The termination of the parental rights of [Respondent] would allow [Jeb]'s well-being to continue.
>
> . . . .
>
> 27. That the minor child has not seen nor heard from Respondent-Father since he was a toddler. There is no close bond between Juvenile and Respondent-Father due to Respondent-Father's incarceration. [Jeb] does not

inquire about his father. He [is] well-adjusted and happy.

> 28. While the Respondent-Father cares for [Jeb], the Court finds termination of parental rights is in the best interests of the minor child at this time. Termination of parental rights will aid in the additional stability and permanence of [Jeb]'s life and well-being.

Respondent challenges two of these findings. He contends that findings of fact 24 and 28 are unsupported to the extent that they suggest that Jeb lacked consistency and stability and that termination would aid in additional consistency and stability. He also contends that these findings do not adequately take into consideration the fact that there was no pending adoption for Jeb. Respondent believes that, since Jeb is currently in a stable, permanent placement, termination would not result in any changes for him, and "[t]he trial court's best interest determination was therefore based on nonexistent justifications."

The only evidence presented during the dispositional phase of the hearing was a report prepared by Jeb's guardian ad litem. In his report, the guardian ad litem stated that "[i]f the [termination of parental rights] were granted, [Jeb] would be afforded additional stability and permanence." The trial court's challenged findings of fact are consistent with the guardian ad litem's statement. In proper context, the court's findings reflect that Jeb will need *continued* stability and permanence in the future and that termination would provide additional aid towards that goal.

Moreover, the lack of a potential adoptive second parent for Jeb was irrelevant.

As we have previously explained, "the trial court need not find a likelihood of adoption in order to terminate parental rights." *In re C.B.*, 375 N.C. 556, 561 (2020); *see also In re A.R.A.*, 373 N.C. at 200 ("[T]he absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights." (alteration in original) (quoting *In re D.H.*, 232 N.C. App. 217, 223 (2014))).

¶ 23    The trial court's order reflects that it considered the relevant factors under N.C.G.S. § 7B-1110(a), and the trial court's conclusion that terminating respondent's parental rights was in Jeb's best interests was neither manifestly unsupported by reason nor so arbitrary that it could not have been the result of a reasoned decision. *See In re M.A.*, 374 N.C. at 876. We therefore hold there was no abuse of discretion in the trial court's conclusion that termination of respondent's parental rights was in his son's best interests.

## V.    Conclusion

¶ 24    The trial court made sufficient findings of fact, supported by clear, cogent, and convincing evidence, to establish that respondent previously neglected Jeb by molesting another child in his presence and that respondent would be unable to provide proper care and supervision to Jeb in the future. Accordingly, we hold the trial court properly concluded that respondent's parental rights were subject to termination based on neglect under N.C.G.S. § 7B-1111(a)(1).

¶ 25    The trial court also made sufficient findings, supported by competent evidence,

to support its discretionary determination that termination was in Jeb's best interests. We affirm the termination order.

AFFIRMED.